### John Mulhern vs. Patrick McDavitt.

A husband who receives into his family the children of his wife by a former marriage stands to them *in loco parentis*, and, in the absence of express contract or of circumstances showing a different arrangement, has a right to their services and is liable for their support and education.

A husband, who for seven years has lived in a house belonging to his wife and her three children by a former marriage, has been appointed guardian of the children and kept them in the house with himself and their mother, has no property of his own, has only earned enough during the time to support the united family, and has sold the real estate of his wards by leave of court, is not to be charged in his guardian's account with any previous rent thereof, or credited with taxes paid thereon, or with the board and clothing of his wards, but may be allowed a reasonable amount paid for the expenses of one of the wards at a boarding school.

APPEAL from a decree of the probate court, allowing an account of a guardian, crediting his ward with $276.92, proceeds of sale of his undivided fourth of certain real estate, with $186.66 for nearly seven years' rent thereof, and $49.50 for the ward's services, and charging him with $14.84 for taxes on his said share of the real estate, $237.50 for board and clothing for three years and eight months, and $104 for his expenses at a boarding school.

Hearing before *Hoar*, J., who reported the case for the opinion of the full court upon the following facts agreed:

The appellant was a son of John Mulhern, who died in 1851, leaving a widow and three minor children, a small amount of personal property, consisting chiefly of household furniture, and a bond for a deed of the house occupied by him, which was worth about eleven hundred dollars, and was afterwards conveyed to his wife and children, to hold in equal proportions. No letters of administration on his estate were ever taken out. In August 1852 the appellee married the widow and went to live with her and her children, occupying their house, having no children of his own, and assuming by common consent the direction of affairs as head of the family. He had little or no property of his own, and has been engaged in keeping a small shop on the premises, earning little or nothing more than enough to support the family, and employing the appellant, from time

to time, in his shop. In January 1857 the appellee was ap-
pointed guardian of his wife's children, and in April 1859 sold
the real estate of his wards by license of the probate court.
The board and lodging charged to the ward in the guardian's
account covered time both before and after his appointment,
and the last charge in the account was for money paid before
such appointment for the ward's board and tuition at the House
of the Angel Guardian, a private boarding school in Boston.

*J. W. May,* for the appellant, cited 2 Kent Com. (6th ed.) 192;
1 Parsons on Con. 257; *Stone* v. *Carr,* 3 Esp. R. 1; *Williams*
v. *Hutchinson,* 3 Comst. 312; *Sharp* v. *Cropsey,* 11 Barb. 224;
*Lantz* v. *Frey,* 19 Penn. State R. 366; *Brush* v. *Blanchard,* 18
Ill. 46; *Hussey* v. *Roundtree,* Busbee, 110; *Guenther* v. *Birkicht,*
22 Missouri, 439.

*G. Morrill,* for the appellee, cited *Tubb* v. *Harrison,* 4 T. R.
118; *Cooper* v. *Martin,* 4 East, 76; *Freto* v. *Brown,* 4 Mass. 675;
*Worcester* v. *Marchant,* 14 Pick. 510; *Cole* v. *Eaton,* 8 Cush.
587; Reeve Dom. Rel. 324; *Dawes* v. *Howard,* 4 Mass. 97;
*In re Kane,* 2 Barb. Ch. 375; *Harring* v. *Coles,* 2 Bradf. 349;
*Gillett* v. *Camp,* 27 Missouri, 541.

CHAPMAN, J. A husband was not by the common law obliged
to support the children of his wife by a former marriage. This
doctrine has been recognized in this Commonwealth. *Freto* v.
*Brown,* 4 Mass. 675. *Commonwealth* v. *Hamilton,* 6 Mass. 273.
*Worcester* v. *Marchant,* 14 Pick. 510. The law has been changed
in this respect in England, by *St.* 4 & 5 W. 4, *c.* 76, § 57, which
requires the husband to support the children of his wife, legiti-
mate or illegitimate, as a part of his family, till they arrive at
the age of sixteen years or till the death of their mother. We
have no statute on the subject, and the common law is still in
force here.

But though the husband is not obliged to take the children
into his family, yet if he does so he stands *in loco parentis* in
respect to them, and in the absence of an express contract, or
of circumstances showing a different arrangement, he has a
right to their services, and is liable for their support and edu-
cation. 2 Kent Com. (6th ed.) 192.

In *Stone* v. *Carr*, 3 Esp. R. 1, the second husband had taken possession of the house and business of the deceased husband, and had gone abroad, leaving the children in the care of his wife. He was held liable on her contract for their maintenance and education. Lord Kenyon said, if the wife had property by her first husband, the case was stronger; for then part of the property of which he possessed himself belonged to the children; but even if the father had died insolvent, it would not have altered his opinion. In *Cooper* v. *Martin*, 4 East, 76, the stepfather recovered of the wife's son compensation for his support, but it was placed on the ground of a promise to pay by the son after he came of age, he having a considerable estate and the stepfather being poor.

The case of *Williams* v. *Hutchinson*, 3 Comst. 312, was an action by the wife's son to recover of the stepfather for the value of his services over and above his support. The balance was found to be considerable; but it was held that he could not recover. The subject is there discussed fully, and the authorities are cited. The court held that by receiving the wife's child into the family, the husband stands *in loco parentis*, with the rights and obligations of a parent; and that the policy of the law is to encourage an extension of the circle and influence of the domestic fireside, and its presumptions are in favor of the existence of this relation, unless a different arrangement is proved to have been made.

In this commonwealth it is quite common, upon second marriages, that the wife's children are received into the family as members; and such an arrangement must tend to promote the happiness of the mother and the welfare of the children. It is therefore a wise policy which encourages the extension of the family relation to cases of this kind, and presumes its existence in the absence of a different arrangement.

If then the appellee stood *in loco parentis* towards the appellant, no charge should be made for services on the one hand, nor for board or education on the other. There is no evidence tending to show any agreement during the mother's life. The appellee married her, moved into the house which belonged to

her and the children, and made it his home. The whole family remained there, the appellee laboring for him except when at school, and the appellee providing for their support. The children had the best possible use of their property, and no rent ought to be allowed for it. But under all the circumstances of this case the court are of opinion that the sum of $104, which was paid for the board and tuition of the appellant at the Angel Guardian, should be charged upon his property. The account should be reformed by striking out the credit for rent and the charges for board, clothing and taxes. *Decree accordingly.*